**Opinion filed February 23, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00199-CV
_____

## IN THE MATTER OF A.F., A JUVENILE

**On Appeal from the County Court at Law**
**Midland County, Texas**
**Trial Court Cause No. J07193**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the county court at law, sitting as a juvenile court, waived its jurisdiction over A.F. (Appellant) and transferred the cause to a criminal district court. *See* TEX. FAM. CODE ANN. § 54.02 (West 2014), § 56.01(c)(1)(A), (h), (h-1) (West Supp. 2020). In a single issue on appeal, Appellant asserts that the evidence was insufficient to support the juvenile court's findings and the waiver of its jurisdiction and that the juvenile court therefore abused its discretion when it waived jurisdiction over Appellant and entered the transfer order. We affirm.

*Standard of Review and Applicable Statutes*

In an appeal from an order in which a juvenile court waives its jurisdiction and enters a discretionary transfer order, an appellate court applies an abuse-of-discretion standard of review to the juvenile court's decision to transfer. *Moon v. State*, 451 S.W.3d 28, 46–47 (Tex. Crim. App. 2014); *In re S.G.R.*, 496 S.W.3d 235, 239 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Before determining whether the juvenile court abused its discretion when it waived its jurisdiction, we must first review the juvenile court's specific findings of fact. *Moon*, 451 S.W.3d at 47. The juvenile court's findings are reviewed under the traditional civil standards for sufficiency of the evidence. *Id.*; *S.G.R.*, 496 S.W.3d at 239. To review the legal sufficiency of the evidence in support of a finding, we review the record—crediting evidence favorable to the finding and disregarding contrary evidence unless a reasonable factfinder could not reject the evidence—and will uphold the finding if it is supported by more than a scintilla of evidence. *S.G.R.*, 496 S.W.3d at 239; *see City of Keller v. Wilson*, 168 S.W.3d 802, 813, 827 (Tex. 2005). To review the factual sufficiency of the evidence in support of a finding, we consider and weigh all the evidence in a neutral light and will set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *S.G.R.*, 496 S.W.3d at 239.

Here, the State moved for transfer pursuant to Section 54.02(a) of the Family Code. Section 54.02(a) sets out the requirements for the discretionary transfer of a child to an appropriate district court. That section provides that a juvenile court may waive its exclusive original jurisdiction and transfer a child to district court for criminal proceedings if:

> (1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

. . . .

(B) 15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning that offense; and

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

FAM. § 54.02(a).

When making the determination under Section 54.02(a), a juvenile court must consider, "among other matters," the following:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f). The juvenile court here conducted a hearing and made the requisite findings under Section 54.02(a) and (f). Prior to the hearing, the juvenile court had ordered and obtained a diagnostic study, a social evaluation, and an investigation of the child as required by Section 54.02(d).

*Background Facts*

In March 2020, the State filed a petition for discretionary transfer to a criminal district court, and the juvenile court conducted a transfer hearing in August 2020 to address the State's petition. Prior to the transfer hearing, Appellant had been charged with the commission of six counts of aggravated assault, all of which were second-degree felony offenses as charged. *See* TEX. PENAL CODE ANN. § 22.02(a), (b) (West 2019). One of the offenses allegedly occurred on October 29, 2019, and the remaining five on March 18, 2020. Appellant had also been charged with one count of theft of a firearm, a state jail felony. *Id.* § 31.03(a), (e)(4)(C). Appellant was fifteen years old when the offenses at issue were committed, when the State filed its request for discretionary transfer, and when the juvenile court conducted the transfer hearing.

The record from the transfer hearing reflects that the State offered numerous exhibits and called six witnesses to testify. The witnesses included two of the victims of the aggravated assaults allegedly committed by Appellant, a crime scene investigator with the Midland Police Department, a detective with the Midland Police Department, the clinical psychologist who conducted the court-ordered diagnostic study of Appellant, and a certified juvenile probation officer.

The juvenile probation officer, Bransen Richards, indicated that Appellant's involvement with juvenile probation began when Appellant was thirteen years old. At that time, Appellant was placed on deferred prosecution for criminal trespass. While he was still thirteen, Appellant was charged with misdemeanor assault and harassment by a person in a corrections or detention facility. Appellant was adjudicated for these offenses when he was fourteen and was placed on juvenile probation for one year. Richards began supervising Appellant at that time.

Appellant was detained five separate times for violating the conditions of his probation. Then, shortly after Appellant turned fifteen and while still on probation, he was charged with aggravated assault with a deadly weapon and theft of a firearm. Appellant was released from detention on a pretrial release but, less than three months later, was charged with yet another aggravated assault with a deadly weapon. After three months in detention, Appellant was released again but was required to wear an ankle monitor. Because Appellant committed numerous "zone violations" during his monitored release, he was again detained; he tested positive for THC and benzodiazepines at that time. Appellant remained at a juvenile detention facility at the time of the transfer hearing.

According to Richards, Appellant used marihuana often and had a substance abuse issue. Appellant also had issues at school, where he was vulgar, argumentative, and disruptive and did not want to follow orders.

The clinical psychologist who performed the diagnostic study of Appellant testified similarly to Richards in many respects. Dr. Nicole Kemper testified that Appellant "endorsed" engaging in theft, robbing people, threatening people, fighting, having anger issues, and using illegal substances. Appellant informed Dr. Kemper that he had been in trouble at school for talking back to teachers, walking out of class without permission, being disruptive, and getting into fights with classmates. He also acknowledged that he began smoking marihuana when he was thirteen years old and that, at his "highest point" of use, he smoked "about five blunts" a day. Dr. Kemper diagnosed Appellant as having "fairly severe" oppositional defiant disorder based upon Appellant's level of defiance and aggressiveness toward authority figures.

Dr. Kemper evaluated Appellant and administered various tests, including an IQ test. Appellant scored a 66 on the IQ test, which, if accurate, would place him in

a level with people that are intellectually disabled. Appellant scored better on an achievement test that was administered by Dr. Kemper, and Dr. Kemper did not believe, based on her interactions with Appellant, that his IQ score was an accurate representation of his actual abilities. Dr. Kemper indicated that Appellant seemed to be bored and unmotivated when he was taking the IQ test and that Appellant did not seem in any way to be intellectually disabled. She believed that Appellant's intellectual abilities were within normal limits, and she found "no contraindications"—with respect to Appellant's intellectual abilities—that would affect his transfer to "adult" court. Richards likewise believed, based on his dealings with Appellant, that Appellant was of average intellect and that he understood the seriousness of the charges against him.

Based upon the results of the Risk Sophistication Treatment Inventory, the Jesness Inventory–Revised, the cognitive assessment, and the narrative assessment of Appellant's level of dangerousness, Dr. Kemper concluded that, although Appellant exhibited a low level of maturity for his age, Appellant exhibited a medium level of criminal sophistication and a high level of dangerousness in comparison to most offenders his age. Appellant had violent tendencies and, according to Dr. Kemper, was at a high risk of engaging in future violent behaviors.

The testimony of two of the victims of the aggravated assaults allegedly committed by Appellant evidenced Appellant's violent tendencies. The victim of the first aggravated assault testified that he had arranged to buy marihuana from someone he had never met but had recently become acquainted with via Snapchat (a multimedia messaging app). The seller's Snapchat name was _2TIMEZZ. That Snapchat name was subsequently linked to Appellant. The victim and three others drove to an apartment complex and parked in a driveway as instructed by _2TIMEZZ. Two males walked up to the car and attempted to rob the victim and

the people with him.  When the victim refused to comply and told Appellant to "leave us alone," Appellant walked about ten feet away from the victim's vehicle and started shooting.  Appellant fired multiple rounds at the victim's vehicle, and the victim sustained severe injuries.  At the transfer hearing, the victim identified Appellant as the shooter.

One of the five victims in a subsequent aggravated assault identified Appellant as one of the assailants that had arrived at the victims' house in a Buick.  The victims of this aggravated assault were two females and three young children.  During the incident, Appellant brandished a handgun.  The older female said something to the effect of: "Don't pull the guns out; we have kids here."  Appellant replied: "We shoot kids, too."

Police had been dispatched to the disturbance.  Officers conducted a felony stop of the Buick as it left the victims' house.  During a search of the Buick, police found a loaded Glock 43 9mm pistol in the area of the car where Appellant had been seated.  Appellant was immediately arrested for five counts of aggravated assault with a deadly weapon.

The testimony of the crime scene investigator and the detective corroborated the testimony of the shooting victim and Appellant's identity as _2TIMEZZ.  These witnesses also testified that, during the execution of a search warrant, officers seized from Appellant's bedroom the following items: marihuana, two handguns—a 45 caliber pistol that had been stolen out of a pickup in Odessa and a 9mm pistol, and numerous live rounds of ammunition.

Richards testified that, at the time of the transfer hearing, Appellant had not been adjudicated for the offenses of aggravated assault or theft of a firearm.  Richards testified that Appellant had not demonstrated an ability to follow the rules of probation and that, due to the serious nature of the offenses, it was the

7

recommendation of the juvenile probation department that Appellant be certified as an adult.

*Analysis*

Appellant specifically contends that the evidence is insufficient to support the findings made by the juvenile court pursuant to Section 54.02(f) as to the sophistication and maturity of Appellant, especially in light of his low score on the IQ test; the record and previous history of Appellant; and the protection of the public and likelihood of rehabilitation. *See* FAM. § 54.02(f)(2)–(4). Appellant asserts that, after reviewing the findings under Section 54.02(f), this court should hold that the juvenile court abused its discretion when it waived jurisdiction over Appellant. We disagree.

The juvenile court addressed each of the four factors enumerated in Section 54.02(f) and stated specific reasons and findings in support of its decision to waive jurisdiction. First, Appellant has been charged with offenses against persons. He acknowledges that this finding is supported by the evidence.

Second, the juvenile court's finding regarding Appellant's sophistication and maturity was supported by the reports and the testimony of Richards and Dr. Kemper. Dr. Kemper explained that Appellant did not seem to be intellectually disabled in any way, despite the low score on an IQ test—a test on which Appellant did not seem to put much effort. Dr. Kemper and Appellant's juvenile probation officer believed that Appellant's intellectual abilities were within normal, average limits. Although Appellant may have exhibited a low level of maturity for his age, he exhibited a medium level of criminal sophistication and a high level of dangerousness. Dr. Kemper expressly testified that she found "no contraindications"—with respect to Appellant's intellectual abilities—that would affect his transfer to "adult" court.

8

Third, with respect to Appellant's record and history, the evidence showed that he had numerous arrests and that the offenses for which he had been arrested escalated quickly from criminal trespass, to resisting arrest, to assault, to harassment by a person in a correctional or detention facility, and finally to multiple counts of aggravated assault with a deadly weapon. Richards testified that Appellant's criminal history score was "a 16," which was one of the highest criminal history scores that Richards had seen.

Fourth, as for the protection of the public and the likelihood that Appellant can be rehabilitated through services and facilities available to the juvenile court, the evidence shows that the public needs to be protected from Appellant and that attempts to rehabilitate Appellant through the juvenile justice system have failed. Furthermore, the offenses that Appellant allegedly committed are serious in nature and were committed while he was on juvenile probation. Applying the traditional civil sufficiency standards of review set forth earlier in this opinion, we hold that the juvenile court's findings under Section 54.02(f)(1), (2), (3), and (4) are supported by legally and factually sufficient evidence. *See Moon*, 451 S.W.3d at 47; *S.G.R.*, 496 S.W.3d at 239.

Finally, we must determine whether the juvenile court abused its discretion when it ultimately waived its jurisdiction and transferred Appellant to the district court for criminal proceedings. *See Moon*, 451 S.W.3d at 47. To do so, we must ask, in light of our own analysis of the sufficiency of the evidence to support the Section 54.02(f) factors and other relevant evidence, whether the juvenile court acted arbitrarily or without reference to guiding rules or principles when it concluded that the seriousness of the offenses alleged against Appellant or Appellant's background required that Appellant be transferred for adult criminal proceedings for the welfare of the community. *Id.* Based on this court's analysis of the sufficiency of the

evidence to support the Section 54.02(f) factors and other evidence set forth above, we conclude that the record supports the juvenile court's determination of probable cause and that the juvenile court did not abuse its discretion when it determined that, because of the seriousness of the offenses alleged or Appellant's background, the welfare of the community required adult criminal proceedings. *See* FAM. § 54.02(a)(3). Therefore, we hold that the juvenile court did not abuse its discretion when it transferred Appellant to the district court for criminal proceedings. Appellant's sole issue on appeal is overruled.

We affirm the order of the juvenile court.


JOHN M. BAILEY
CHIEF JUSTICE


February 23, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[1]

Williams, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.